IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TINA SAN MIGUEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10CV969-SRW |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Tina San Miguel brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under the Social Security Act. Upon its review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed and this action remanded for further proceedings.

**Background**

In October 2006, when she was twenty-five years old, plaintiff filed applications under Titles II and XVI of the Social Security Act, alleging disability since May 2003 due to mental impairments of bipolar disorder, depression and anxiety. She alleged, "When I work it is very stressful and I get anxiety REALLY bad around other people (I get dizzy, vomit, breath[e] funny ...)." (R. 177). She stated that when she is nervous, she cannot

remember simple things and that her mood shifts cause her to be unable to keep a job. She said that, "Coping with the work environment all day puts enormous mental and physical strain on me causing break downs[,]" and noted that when she is stressed, she becomes depressed. (Id.).

On May 19, 2009, an ALJ conducted an administrative hearing regarding plaintiff's claims. The ALJ rendered a decision on May 27, 2009, in which he found that plaintiff suffers from the severe impairments of bipolar disorder, generalized anxiety disorder, and personality disorder, but that she retained the residual functional capacity to perform her past relevant work as a bank proof reader and, accordingly, that she had not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the decision. On September 14, 2010, the Appeals Council denied review. Thus, the ALJ's unfavorable determination stands as the final decision of the Commissioner.

**Standard of Review**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145.

Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## Discussion

On February 26, 2009, plaintiff was evaluated by Dr. J. Walter Jacobs, a consultative psychologist. (R. 511-18). On Axis I, Dr. Jacobs assessed bipolar disorder and a "rule out" diagnosis of paranoid schizophrenia; on Axis II, he diagnosed personality disorder. (R. 515). He concluded that plaintiff's mental impairments do not restrict her ability to understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; carry out complex instructions; or make judgments on complex work-related decisions. (R. 516). Dr. Jacobs further concluded that plaintiff has moderate limitations in her ability to interact appropriately with the public, supervisors and co-workers, and also in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 517). Asked to identify the factors that support his assessment, Dr. Jacobs wrote, "She appears to [be] very suspicious + distrustful of others. She is sensitive, quick to take offense. The

claimant is very labile emotionally." (Id.).[1]

At the administrative hearing, the ALJ took testimony from Barry Murphy, a vocational expert. The VE testified as follows:

> [ALJ:] Now, there are no physical limitations to consider here, but the psychological considerations to be considered are basically when we're considering simple instructions, carrying them out, understanding, remembering; ability to make judgments; simple work-related decisions; understand, remember complex instructions and carry them out; make judgments on complex work-related decisions, she has no restrictions.
>
> But she does have moderate restrictions on interacting appropriately with the public; interacting appropriately with supervisors; interacting appropriately with co-workers; and responding appropriately to usual work situations; and [to] changes in routine work settings, since she appears to be very suspicious and distrustful of others. She's sensitive, quick to take offense, and she's [INAUDIBLE] emotional, which would kind of tell me she might be restricted in her ability to interact with other people.
>
> I think the testimony clearly indicates that is a problem. Keeping her away from other people on a regular basis, where you're interacting with the general public, are there any jobs in her past relevant work that she could continue?
>
> [VE:] Yes, Sir. The proofer job is going to have a pretty limited, well very limited contact with the general public, but fairly limited contact with co-workers and supervisors, also.

(R. 44-45).

In his decision denying plaintiff's claims, the ALJ found that the plaintiff retained the residual functional capacity:

---

[1] The court does not summarize the other medical evidence of record, because the ALJ relied on Dr. Jacobs' opinion in formulating his hypothetical question to the VE (see ALJ's statement at R. 49), and claims that his RFC finding is as indicated on Dr. Jacobs' Medical Source Statement (R. 18).

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing work that requires no more than occasional interaction with co[-]workers, supervisors, general public, and is limited to work that will allow for occasional inappropriate behavior in responding to changes in the work situations and setting.

(R. 18). The ALJ stated that "[Dr. Jacobs] indicated on an accompanying Medical Source Statement of Ability to Do Work Related Activities (Mental) that the claimant had the above cited (residual functional capacity)." (Id.) The ALJ gave Dr. Jacobs' opinion "significant weight[,]" further observing that "[Dr. Jacobs] also stated that the claimant was able to function independently and could perform even complex work functions." (Id.). The ALJ further found that plaintiff is "capable of performing past relevant work as a "bank proof reader ... as it is actually and generally performed." (R. 19).

Plaintiff contends that the ALJ's residual functional capacity finding is ambiguous and that, as a result, his conclusion that she can perform her past relevant work as a bank proof reader is not supported by substantial evidence. She points to his conclusion that she "is limited to work that will allow for occasional inappropriate behavior in responding to changes in the work situations and setting" and notes that "[t]he ALJ does not identify or define inappropriate behavior." Plaintiff argues that, as a result, it is difficult to determine whether this particular limitation would prevent her from performing her past relevant work. (Plaintiff's brief, p. 5). The Commissioner responds to this contention by arguing that "[i]n the hypothetical question posed to the vocational expert, the ALJ implicitly defined this inappropriate behavior as being 'very suspicious and distrustful of others[;] she's sensitive,

5

quick to take offense, and she's emotional' (Tr. 44), language that comes word for word from Dr. Jacob[s'] assessment." (Commissioner's brief, pp. 8-9). The Commissioner acknowledges that "the ALJ could perhaps have been more artful in his assessment," but insists that "the meaning of his finding is clear." (Id., p. 9).

## Ambiguity of the RFC Limitation

The court declines to find that the ALJ "implicitly defined" inappropriate behavior as set forth above, for several reasons. First, the language quoted from Dr. Jacobs' assessment by the ALJ in his hypothetical question to the VE describes plaintiff's negative emotional tendencies, but does not explain how she can be expected to behave in response to her feelings of suspicion, distrust, and offense. Second, the RFC limitation challenged by plaintiff pertains to the work-related mental activity identified by the ALJ as "responding to changes in the work situations and setting." (R. 18). While it is perhaps *possible* that Dr. Jacobs' identified plaintiff's characteristics of being "very suspicious + distrustful of others[,]" "sensitive," and "quick to take offense" in support of his conclusion that plaintiff has moderate limitations in her ability to respond appropriately to changes in a routine work setting (See R. 517), this is not how the ALJ actually interpreted Dr. Jacobs' opinion. The characteristics ("factors") identified by Dr. Jacobs relate more logically to his assessment that plaintiff has moderate limitations in her ability to interact appropriately with co-workers, supervisors, and the public, and it is clear that this was the ALJ's understanding of Dr. Jacobs' notation, as the ALJ said so within his hypothetical question to the VE. (See R. 44)("She's sensitive, quick to take offense, and she's [inaudible] emotional, *which would*

*kind of tell me that she might be restricted in her ability to interact with other people*.")(emphasis added).  The ALJ did not define "inappropriate behavior" implicitly, as the Commissioner argues, nor did he define it expressly.

The ambiguity created by the ALJ's statement of the limitation at issue is demonstrated by the Commissioner's argument. The Commissioner explains that the limitation means that plaintiff's work must allow for inappropriate behavior for "one-third of the time Plaintiff had to 'limited'[2] exposure to others in the workplace, rather than to one-third of the time Plaintiff was at work [as plaintiff contends]." (Commissioner's brief, p. 9 n. 6). While the Commissioner's explanation of the limitation is consistent with the Commissioner's contention that the ALJ "implicitly defined" inappropriate behavior as being "'very suspicious and distrustful of others[;] ... sensitive, quick to take offense, and ... emotional[,]'" it is not at all consistent with the express language of the ALJ's RFC finding, which states a limitation "to work that will allow for occasional inappropriate behavior *in responding to changes in the work situations and setting*." (R. 18)(emphasis added). Changes "in the work situations and setting" may or may not involve interacting with other people in the workplace.[3]  Regardless of how frequently the ALJ's statement of plaintiff's

---

[2] In using the word "limited" the Commissioner quotes the VE's testimony.  The RFC limitation is to "occasional" interaction.

[3] Additionally, while it appears that the ALJ attempted to account for plaintiff's moderate limitation to "changes in a routine work setting" (R. 517) by limiting her to "work that will allow for occasional inappropriate behavior in responding to changes in the work situations and setting" (R. 18) his opinion does not make clear how (or whether) he accounted for Dr. Jacobs' assessment that plaintiff is moderately restricted in her ability to "[r]espond appropriately to *usual work situations*" (R. 517).

RFC allows her to engage in "inappropriate behavior" at work, however, the fact remains that such behavior is not defined in the ALJ's decision or elsewhere. The court concludes that the ALJ's limitation is, as plaintiff argues, ambiguous.

### Harmless Error

Further, the court does not find this ambiguity to be "harmless error" as the Commissioner argues (Commissioner's brief, p. 9). To determine whether the Commissioner's decision is supported by substantial evidence, or whether the ALJ otherwise committed reversible legal error, the court must be able to understand – with certainty – what the ALJ has found that the plaintiff is able to do. The ambiguity presented by the ALJ's finding that plaintiff is limited to work allowing "inappropriate behavior" is compounded by additional errors in the ALJ's decision which preclude a conclusion that the error is "harmless."

For instance, plaintiff testified at the hearing that she has "anxiety every day" and that, depending on her level of anxiety, she does "a lot of pacing, walking around ... flail[ing] [her] hands a lot, [and] crying, a lot of crying." (R. 42). She further testified that she has "one bad panic attack a week" where she is "freaking out and [has] to call the doctor." (Id.). In her initial disability report, plaintiff stated that she "get[s] anxiety REALLY bad around other people" causing her to "get dizzy, vomit, breath[e] funny[.]" (R. 177). Because the ALJ's credibility determination is also flawed, it is not apparent from the ALJ's decision whether he accepted any portion of these allegations as credible, and as encompassed within the "inappropriate behavior" permitted occasionally by the assessed RFC in response to

8

workplace changes. In his decision, the ALJ barely touched on the nature of plaintiff's alleged symptoms, recounting only Dr. Jacobs' assessment that she has moderate difficulties in interacting with the public, supervisors, and co-workers and reporting those activities included in plaintiff's daily activities report that supported the ALJ's conclusions. (See R. 17). The ALJ merely: (1) stated the legal standard for analyzing a claimant's allegations of subjective symptoms (R. 18); (2) summarized the medical record (R. 18-19);[4] and then (3) concluded – without any analysis of plaintiff's allegations – that "the claimant's symptoms are not credible to the extent they are inconsistent with the above residual functional capacity (R. 19). While the ALJ found plaintiff's alleged symptoms to be "not credible" to some extent, he did not recount her alleged symptoms anywhere in the decision and did not articulate any specific reasons for rejecting any of the alleged symptoms. The court cannot determine whether the ALJ credited plaintiff's testimony that she experiences daily anxiety and "one bad panic attack a week" in part, as he may have intended "inappropriate behavior" to include "freaking out," pacing and/or crying occasionally in response to workplace

---

[4] The ALJ's summary is correct technically but is misleading due to certain omissions. The ALJ noted that Dr. Jacobs "stated that the claimant was able to function independently and could perform even complex work functions." As plaintiff argues, Dr. Jacobs stated, "Intellectually, [plaintiff] is able to function independently. There is doubt whether she is sufficiently stable from a psychiatric standpoint to function independently." (R. 515). The ALJ also observes, citing Exhibits 6F and 9F, that the "[m]edical records document the claimant's history of depression[.]" (R. 18). While plaintiff complained of depression, the primary diagnosis in plaintiff's records from Hill Country Community MHMR Center is bipolar disorder (Exhibit 6F; see R. 404); in her evaluation by SpectraCare in March 2007, the psychologist diagnosed bipolar disorder, cannabis abuse, and "social-relational problems[.]" (Exhibit 9F; see R. 440). Exhibit 1F, while it pertains to a time period before the alleged onset date, documents plaintiff's treatment for depression from 1999 through 2002. (R. 238-58).

changes.

The court cannot analyze the ALJ's step 4 finding that plaintiff can perform her past work as a bank proof reader, as it is performed generally, for substantial evidence because – without knowing what the ALJ meant by "inappropriate behavior" – the court cannot conclude that the ALJ's hypothetical question to the vocational expert included all of plaintiff's limitations.[5]  The court's analysis of the ALJ's step 4 conclusion that plaintiff can perform her job as she actually performed it is also hampered to some extent by this ambiguity – without knowing what "inappropriate behavior" means, the court has no basis for comparing the RFC with the mental demands of plaintiff's past relevant work as a bank proof reader as she actually performed the job.[6]  See Barrio v. Commissioner of Social Security Administration, 394 Fed. Appx. 635, 637 (11th Cir. 2010)(unpublished

---

[5]  The ALJ cites no vocational resource other than the VE's testimony to support his conclusion that plaintiff's RFC permits her to perform the requirements of the bank proofer job as it is generally performed.  (See R. 19).

[6]  The court *is* able to conclude that the ALJ's step 4 finding as to plaintiff's past relevant work as she actually performed it is not supported by substantial evidence of record or the proper legal analysis. The ALJ reasoned, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  This is based on the testimony of the vocational expert at the hearing and Dr. Jacobs, (Exhibit 19F), as well as the claimant's own description of her activities and abilities (Exhibit 6E)."  (R. 19).  Exhibit 6E is plaintiff's "Activities of Daily Living" form (R. 210-14).  It includes no information regarding the mental demands of plaintiff's past work. The ALJ's reference to Exhibit 6E does not appear to be a typographical error.  Even if he intended to refer to plaintiff's description of her bank proofer job in Exhibit 5E (R. 208) or in Exhibit 4E (R. 192), those descriptions include no information about whether plaintiff was required to interact with co-workers or supervisors more than occasionally.  At her hearing, plaintiff testified that she had no interaction with customers at that job (R. 34) and the ALJ elicited no further testimony regarding the mental demands of the work. Dr. Jacobs' report, cited by the ALJ, states that plaintiff had "worked in a bank," but it includes no information about the mental demands of that job. The VE testified, at most, that plaintiff's bank proofer job was sedentary and semi-skilled.  (R. 44).

opinion)("Because of the ALJ's ambiguous RFC assessment, it is difficult to discern whether the ALJ included a restriction to simple routine tasks in concluding that Barrio could return to her past relevant work. In addition to not articulating clearly Barrio's mental RFC, the ALJ also failed to discuss the specific duties of Barrio's former job as an assignment clerk and how or whether the RFC determination allowed her to do these tasks.").

Plaintiff further asserts that the ALJ denied her right to due process by "effectively prohibiting [plaintiff's] representative from cross[-]examining the vocational expert." (Plaintiff's brief, pp. 8-14.). The court agrees with plaintiff's contention that – at least as to the second hypothetical question she sought to ask the vocational expert – the question was supported by the evidence of record, even if not by a medical source opinion. Thus, the ALJ should have permitted plaintiff's representative to proceed with her question to the VE. See 20 C.F.R. § 404.950(e)("The administrative law judge may ask the witnesses [at a hearing] any questions material to the issues and shall allow the parties or their designated representatives to do so."). Whether the ALJ's failure to permit plaintiff to proceed with her question to the ALJ constitutes a violation of due process depends, however, on whether plaintiff has demonstrated prejudice. See Gordon v. Astrue, 249 Fed. Appx. 810, 813 (11th Cir. 2007)("[W]e have indicated that 'there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'")(citation omitted). If the ALJ had rejected or discounted plaintiff's allegations of symptoms clearly and properly, or if he had not injected an ambiguity into his RFC determination, plaintiff may

11

not have been able to demonstrate prejudice arising from the ALJ's failure to allow plaintiff's cross-examination of the VE. However, because of the ALJ's errors in explaining his RFC finding, and in assessing the credibility of plaintiff's allegations regarding her symptoms, the court is unable to determine whether plaintiff was prejudiced by his error in truncating her cross-examination of the vocational expert.[7]

## CONCLUSION

Because the ALJ's errors preclude effective review of the Commissioner's decision, the Commissioner's decision is due to be REVERSED. A separate judgment will be entered.[8]

DONE, this 30th day of March, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[7] Whether or not plaintiff's final allegation of error – that the ALJ denied her a full and fair hearing because of his bias against claimants with bipolar disorder – has any merit, plaintiff waived the error by failing to raise it at the earliest opportunity. The record does not reflect that she raised the issue before either the ALJ or before the Appeals Council. See Jarrett v. Commissioner, 422 Fed. Appx. 869 (11th Cir. 2011)(unpublished opinion)("If a claimant fears that a particular ALJ will not provide a fair hearing, she must notify the ALJ at the 'earliest opportunity.' If the ALJ then declines to recuse herself, the claimant may seek reconsideration by raising the issue before the Appeals Council.")(citing 20 C.F.R. § 404.940).

[8] In reversing the Commissioner's decision, the court expresses no opinion regarding the claimant's entitlement to disability. The court here holds only that the ALJ's decision demonstrates errors requiring reversal.